E. Jean METCALF, and on behalf of herself and all others similarly situated, Plaintiff,

v.

**PAINEWEBBER INCORPORATED, Defendant.**

Civ. A. No. 93–151 Erie.

United States District Court, W.D. Pennsylvania.

May 11, 1995.

504

Wayne G. Johnson, Gifford, Lay & Johnson, Harold J. Bender, Bifulco, Bender & Scarpitti, Erie, PA, David R. McCormack, Houston, TX, for plaintiff.

Lonnie Nunley, Hunton & Williams, Richmond, VA, for defendant.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

This is an action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Defendant Painewebber Incorporated ("Paine-Webber") has moved to dismiss Plaintiff's complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action on which relief can be granted. Plaintiff has asked this Court for leave to file a Second Amended Complaint. For the reasons that follow, Plaintiff's motion will be denied, Defendant's motion will be granted, and the complaint will be dismissed with prejudice.[1]

1. Plaintiff has also filed a motion for class certification under Fed.R.Civ.P. 23. In light of this Court's resolution of Defendant's motion to dismiss, Plaintiff's motion for class certification will be denied as moot.

## I. BACKGROUND

This case arises as a result of Plaintiff's investment in PaineWebber Equity Partners I Limited Partnership ("EP–I"), a real estate limited partnership marketed by Paine-Webber in 1985 and 1986. EP–I used investment proceeds to acquire interests in more than one-half dozen commercial real estate properties throughout the United States. Unfortunately, these real estate ventures experienced financial difficulties and those who purchased an interest in EP–I lost the benefit of their investments.

Plaintiff commenced this action on May 20, 1993. In her First Amended Complaint ("FAC"),[2] she pleads four counts under the private right of action of 18 U.S.C. § 1964(c), claiming that Defendant violated each of the four subsections of § 1962.[3] Plaintiff alleges that PaineWebber engaged in a pattern of racketeering activity identified as various acts of wire fraud in violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341, and securities fraud in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5.

More specifically, Plaintiff avers that Defendant, in its sales materials, guaranteed prospective EP–I investors an annual return of nine percent of their investment and a return of capital at some future time. FAC ¶ 1; Pl.'s RICO Case Statement ¶ 4. The actual rate of return allegedly decreased during 1989, and distribution payments stopped completely during 1993. FAC ¶ 4(c). Plaintiff also claims that Defendant failed to disclose information about tax legislation pending before the U.S. Congress during 1985 and 1986. FAC ¶ 3(a)–(d). This legislation eventually became the Tax Reform Act of 1986 and included substantial changes in the tax rules with respect to investments in real estate. Plaintiff alleges that these changes had a negative effect on the performance of EP–I. FAC ¶ 3(c). Plaintiff further claims that material mailed to her and other EP–I limited partners and information disseminated over telephone lines prevented her discovery of the true condition of her investments. FAC ¶¶ 1(c) and 2(a)–(d).

Defendant allegedly offered other similar investments in addition to the EP–I offering. These investments were denominated Paine-Webber Equity Partners II—Limited Partnership ("EP–II"), PaineWebber Equity Partners III—Limited Partnership ("EP–III"), PaineWebber Income Properties VI—Limited Partnership, and PaineWebber Income Properties VII—Limited Partnership. FAC ¶ 4. Plaintiff maintains that Paine-Webber aided and abetted in the formation of these various real estate limited partnerships, that it was responsible for selling interests in the partnerships, and that "affiliates" of PaineWebber were responsible for managing the partnerships. FAC ¶¶ 5–6. However, plaintiff does not claim to have invested funds in any of the limited partnerships other than EP–I.

Plaintiff also asserts the existence of an "enterprise" or "unit of enterprises." As set forth in the First Amended Complaint, this "enterprise" appears to consist of Paine-Webber and/or EP–I, EP–II and EP–III and their respective constituents.[4] All of the var-

---

**2.** Plaintiff's original Complaint was placed under seal and her First Amended Complaint was filed on May 27, 1993.

**3.** Under § 1964(c), "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." Thus, in order to recover under § 1964(c), a plaintiff must plead "(1) a § 1962 violation and (2) an injury to business or property by reason of such violation." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1187 (3d Cir. 1993).

**4.** The alleged structure of the "enterprise" is set forth in ¶ 15 of the First Amended Complaint. Plaintiff avers that PaineWebber was the "selling broker dealer" for EP–I, EP–II, and EP–III. The two general partners of EP–I are alleged to be First Equity Partners, Inc., a wholly owned subsidiary of Defendant, and Properties Associates 1985, an affiliate of Defendant whose general partners are also officers of First Equity Partners, Inc. The two general partners of EP–II are alleged to be Second Equity Partners, Inc., a wholly owned subsidiary of Defendant's own parent company, PaineWebber Group, Inc., and Property Associates 1986, an affiliate of Defendant whose general partners are also officers of Second Equity Partners, Inc. Plaintiff avers that

ious members of the enterprise are allegedly related to or affiliated with Defendant. FAC ¶¶ 10, 14 and 16(a).

Plaintiff's allegations regarding Defendant's substantive violations of § 1962(a)–(d) are set forth in FAC ¶¶ 5 through 11. Plaintiff claims that PaineWebber violated § 1962(a) in that it received income from its pattern of racketeering activity and then used and reinvested the unlawful income in the continuation of its enterprise by offering subsequent limited partnerships, thereby continuing to engage in interstate commerce with illicitly received proceeds. FAC ¶ 7. Plaintiff further claims that Defendant violated § 1962(b) in that it has maintained an interest in and control of the enterprise through racketeering activity—i.e. its involvement in selling the real estate partnerships and concealing their true investment performance. FAC ¶ 8. It is alleged that Defendant violated § 1962(c) in that it employed or associated itself with the above-referenced "enterprise" to conduct the enterprise's affairs through a pattern of racketeering. In particular, Plaintiff avers that "[Defendant] had a shared purpose of gaining funds from the investing public itself and through its various affiliates" FAC ¶ 9(a). Finally, Plaintiff alleges that Defendant violated § 1962(d) in conspiring to commit the prior three offenses. FAC ¶ 11.

With respect to her own losses, Plaintiff avers that she and the other members of the investing public are victims of Defendant's racketeering activity and have been injured "in that funds turned over to PaineWebber, as a result of its fraudulent, willful, deliberate activity in direct disregard of the truth has led to PaineWebber making enormous sums of money." FAC ¶ 17(a). Plaintiff

seeks to recover damages in the amount of three times her investment pursuant to the treble damages provision of § 1964(c).

Defendant offered the instant Motion to Dismiss on September 29, 1993. Among other things, Defendant argues that Plaintiff has failed to allege a cause of action under RICO.[5] With respect to 18 U.S.C. § 1962(a) and (b), Defendant argues that Plaintiff has failed to properly allege an injury resulting from the specific racketeering activity proscribed by those sections. Defendant maintains that the § 1962(c) claim should be dismissed because Plaintiff has failed to identify an "enterprise" distinct from the "person" being sued—i.e. PaineWebber. Defendant also argues that the allegation that Defendant conspired in violation of § 1962(d) to violate RICO fails because Plaintiff has not successfully alleged a violation of any other subsection of § 1962.

Plaintiff initially sought to stay her response to Defendant's motion to dismiss, but the Court denied her request in an Order dated February 14, 1994. In her response filed on March 16, 1994, Plaintiff briefly addressed the motion to dismiss each of her claims under § 1962 but essentially took the position that additional time for discovery was needed in order to fully address the Rule 12(b)(6) motion. Defendant filed its reply brief on April 19, 1994, arguing that Plaintiff's responsive brief failed to rehabilitate any of her claims.

Thereafter, the Court entered orders allowing the parties more than six months to conduct discovery confined to the issue of whether Plaintiff had identified a RICO violation.[6] At the close of this period, Plaintiff

the "managing general partner" of EP–III is Third Equity Partners, Inc., a wholly owned subsidiary of Defendant. Further, the "associate general partner" is alleged to be PaineWebber Partnerships, Inc., a wholly owned subsidiary of Defendant and Properties Associates 1988 LP. *See generally* FAC ¶ 15.

5. In its initial brief in support of dismissal, Defendant argued that its acts had not amounted to fraud or securities violations. Defendant does not press this argument at this point, *see* Defendant's Reply Brief in Support of Its Motion to Dismiss [Doc. No. 45] at 14–15, and the Court will not consider it here.

6. The Court's May 26, 1994 memorandum opinion indicated that this "limited discovery" was to focus on the following issues:

1. whether plaintiff was injured by Paine-Webber's use or investment of the alleged racketeering income, 18 U.S.C. § 1962(a);
2. whether plaintiff was injured by the acquisition or maintenance of an interest in, or control of, an enterprise, *id.* § 1962(b);
3. whether PaineWebber is distinct from the alleged enterprise, *id.* § 1962(c); and
4. whether a conspiracy was properly alleged, *id.* § 1962(d).

moved for leave to file its Second Amended Complaint.[7] In addition, the parties have submitted supplemental briefs addressing PaineWebber's original motion to dismiss. In short, both Plaintiff's motion for leave to file a Second Amended Complaint and Defendant's motion to dismiss have now been exhaustively briefed and are ripe for decision.

## II. STANDARD OF REVIEW

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the complaint and draws all reasonable inferences therefrom in the light most favorable to the plaintiff. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). Accordingly, this Court must consider "whether relief could be granted ... 'under any set of facts that could be proved consistent with the allegations.'" *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 71 (3d Cir.1994) (quoting *National Organization for Women, Inc. v. Scheidler*, —— U.S. ——, ——, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994)). If no cause of action can be identified, dismissal is ordinarily proper.

As noted above, Plaintiff has moved this Court for leave to file a Second Amended Complaint. Accordingly, the Court will test the First Amended Complaint against the alleged deficiencies and then, where necessary, look to the proposed Second Amended Complaint. The Court will not grant Plaintiff's motion for leave to amend if the proposed Second Amended Complaint would not cure any fatal defects that the First Amended Complaint may contain. *Gasoline Sales*, 39 F.3d at 73–74 (citing *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

## III. DISCUSSION

RICO affords a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962." 18 U.S.C. § 1964(c). The four sub-sections of § 1962 each recognize one type of substantive RICO violation:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of unlawful debt ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(b) It shall be unlawful for any person through a pattern of racketeering activity or collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Plaintiff claims that PaineWebber's conduct in relation to EP–I was violative of these subsections. The Court will examine each of the alleged RICO violations to determine whether Plaintiff has adequately stated a claim as to any.

### A. *Plaintiff's Claim under § 1962(a)*

Defendant argues that Plaintiff's claim under § 1962(a) fails because she does not properly allege injury resulting from the use or investment of racketeering income. Upon review of the controlling case law and the pleadings of record, the Court finds Defendant's argument to be well taken.

---

**7.** Although the Court ordered Plaintiff to submit its proposed Second Amended Complaint for consideration as to whether or not leave to file the same would be granted, it appears that Plaintiff actually filed its "Second Amended Complaint" without having first been granted leave to do so. The Court will therefore treat Plaintiff's Second Amended Complaint as not yet having been properly filed, but merely received by the Clerk of Courts.

**508**

Section 1962(a) prohibits persons (including corporations) who have received racketeering income from using or investing that income in the establishment or operation of an enterprise affecting interstate commerce. Thus, this civil cause of action does not simply establish liability for RICO-defined "racketeering activity." Instead, it looks to the *subsequent use* of the income realized from this racketeering activity. *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1188 (3d Cir.1993); *Glessner v. Kenny,* 952 F.2d 702, 708–09 (3d Cir.1991); *Brittingham v. Mobil Corp.,* 943 F.2d 297, 303 (3d Cir.1991); *Rose v. Bartle,* 871 F.2d 331, 357–58 (3d Cir.1989).

The Third Circuit has consistently held that private plaintiffs suing on the basis of a § 1962(a) violation must allege injury from the use or investment of racketeering-derived income, rather than simply pleading injury from the pattern of racketeering activity itself. In *Brittingham v. Mobil Corp.,* 943 F.2d at 304–05, the court affirmed the dismissal of § 1962(a) claims asserted by consumers who had bought garbage bags based on alleged misrepresentations that the bags were biodegradable. The plaintiffs maintained that they had suffered injury from use or investment of racketeering income inasmuch as the funds received from the sale of the garbage bags had permitted the enterprise to perpetuate its operations. The court found that no cognizable injury had been asserted under § 1962(a) and, in fact, the plaintiffs had merely alleged injury caused by the predicate racketeering acts. Moreover, the court explained that the mere reinvestment of racketeering income would not suffice as a § 1962(a) injury:

> [Otherwise] the use-or-investment injury requirement would be almost completely eviscerated when the alleged pattern of racketeering is committed on behalf of a corporation.... Over the long term, corporations generally reinvest their profits regardless of the source. Consequently, almost every racketeering act by a corporation will have some connection to the proceeds of a previous act. Section 1962(c) is the proper avenue to redress injuries caused by the racketeering acts themselves. If plaintiffs' reinvestment injury

concept were accepted, almost every pattern of racketeering by a corporation would be actionable under § 1962(a) and § 1962(c) would become meaningless.

943 F.2d at 305. *See also Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d at 1188 (3d Cir. 1993); *Glessner v. Kenny,* 952 F.2d at 708–09 (3d Cir.1991); *Rose v. Bartle,* 871 F.2d at 357–58 (3d Cir.1989).

Plaintiff's RICO case statement identifies the allegations of FAC ¶ 7 as the basis of her § 1962(a) claim. That paragraph avers as follows:

> 7. The prohibitive [sic] activities engaged in by the Defendant, PaineWebber Incorporated, include violation of 18 U.S.C. Section 1962(a), in that PaineWebber Incorporated received income from this pattern of Racketeering Activity and has used that and reinvested that unlawful income directly and indirectly in the continuation of its enterprise in the offering of subsequent limited partnerships, as set forth herein, but not limited to, and thereby continue to engage in interstate commerce with the illicitly received proceeds.
>
> (a) That in the five (5) enumerated partnerships, PaineWebber Incorporated has received direct sales commissions of at least $32,398,519.
>
> (b) That in the five (5) enumerated partnerships, the issuer, as conspirators with PaineWebber Incorporated, have received organizational fees of at least $11,485,956.
>
> (c) That in the five (5) enumerated partnerships, affiliates and conspirators with PaineWebber Incorporated have received "acquisition fees" of at least $15,314,607.
>
> (d) That in the five (5) enumerated partnerships, some or all of the co-conspirators, including PaineWebber Incorporated, have received and continue to receive substantial fees which to date are at least $3,828,652.

As noted above, Plaintiff alleges that she invested in EP–I and that the process by which shares in EP–I were sold involved various types of fraud. She alleges that the funds that Defendant received from her were used to establish various other limited partnerships in which she did not invest. She

later alleges that "as a direct and proximate result of said Racketeering Activity, the Plaintiffs have incurred an injury, in that funds turned over to PaineWebber, as a result of its fraudulent, willful, deliberate activity in direct disregard of the truth has [sic] led to PaineWebber making enormous sums of money." FAC at ¶ 17(a). However, Plaintiff has not alleged anywhere in her First Amended Complaint that Defendant's *subsequent* investment of the funds it received in connection with EP–I harmed her in any manner. Plaintiff's allegation that PaineWebber has used and reinvested unlawful income directly and indirectly in the continuation of its enterprise does not state a cognizable injury under § 1962(a). *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d at 1188; *Brittingham v. Mobil Corp.*, 943 F.2d at 305. Because the § 1962(a) claim fails to identify any injury of a type that this Court can recognize, the claim cannot withstand Defendant's motion to dismiss.

While conceding that her First Amended Complaint did not state a § 1962(a) claim, Plaintiff argues that her case "has progressed to where Plaintiff can prove that the conspiracy to receive and invest in blatantly bad deals and cover-up of the underlying bad deals exist[s], as pled in the Second Amended Complaint. Further discovery of non-public material is mandatory prior to trial." Pl.'s Supp.Responsive Br. to Def.'s Mot. to Dismiss, at 21.

The Court finds, however, that Plaintiff's proposed Second Amended Complaint would not be curative of the defects discussed above. With regard to the § 1962(a) claim, Plaintiff's only proposed change is to identify specifically the amounts of income that Defendant has realized from the sale of shares in EP–I, as opposed to its income from all of the limited partnerships. Plaintiff's Proposed Second Amended Complaint at ¶¶ 7(a)–(d). This change fails to remedy the problems of Plaintiff's original § 1962(a) claim. Therefore, leave to amend this claim will be denied.

### B. *Plaintiff's Claim under § 1962(b)*

Section 1962(b) makes it unlawful for a person to "acquire or maintain," through a pattern of racketeering activity, any "interest or control" over an enterprise affecting interstate commerce. 18 U.S.C. § 1962(b). Defendant has moved to dismiss Plaintiff's § 1962(b) claim on the grounds that, here as well, Plaintiff has failed to plead an injury cognizable under this subsection. The Court agrees that Plaintiff's First Amended Complaint fails to identify or allege any injury resulting from a violation of § 1962(b) and, therefore, dismissal of that claim is proper.

The Third Circuit has held that, as with § 1962(a) claims, injury from the pattern of racketeering activity alone is not sufficient to support an action for alleged violation of § 1962(b). Rather, the injury must be the result of the defendant's *acquisition or maintenance* of the alleged enterprise. *Lightning Lube, Inc.*, 4 F.3d at 1190–91; *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir.), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

In *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d at 1189–91, the plaintiff claimed that defendants had violated RICO by conspiring with other parties to steal confidential information from plaintiff and making certain misrepresentations to plaintiff's franchisees which resulted in the franchisees terminating their relationship with the plaintiff. The court affirmed a grant of summary judgment for defendant Witco Corporation on the plaintiff's § 1962(b) claim due to the plaintiff's failure to demonstrate a cognizable injury under that provision. In so ruling, the court observed that:

> a well pled complaint under section 1962(b) ... requires the assertion of an injury independent from that caused by the pattern of racketeering.... Here, Lightning Lube alleges in terms of a § 1962(b) injury that employees of Witco were engaged in a pattern of racketeering.... Such an allegation clearly is insufficient because it merely parrots the same injury that section 1962(c) is meant to remedy and fails to explain what additional injury resulted from the [defendant's] interest or control of the enterprise.

4 F.3d at 1191.

In the instant case, Plaintiff's RICO Case Statement identifies the allegations of FAC ¶ 8 as the basis of her § 1962(b) claim:

8. The Defendant, PaineWebber Incorporated, violated 18 U.S.C. Section 1962(b), in that PaineWebber Incorporated has maintained, either directly or indirectly, an interest in and control of, an Enterprise, engaged in interstate commerce, in that:

(a) PaineWebber Incorporated had the sole responsibility for the sale and distribution in interstate commerce of the real estate limited partnerships enumerated herein.

(b) PaineWebber Incorporated derived income from the sale of said partnerships, giving rise to the inference that substantial benefit was directly to PaineWebber Incorporated.

(c) PaineWebber Incorporated, directly and/or through other members of the Enterprise, which are all affiliated corporations or partnerships, used said relationships to conceal the true nature of said alleged investment.

(d) PaineWebber Incorporated, continued beyond PaineWebber Equity Partners I—Limited. Partnership to engage in the sale of said real estate limited partnerships, even after the substantial change in the tax law which became effective October 22, 1986; dramatically changed the potential economic benefit of such limited partnerships.

Notably absent from the foregoing excerpt is any specific allegation as to how Plaintiff was personally injured by virtue of PaineWebber's control of, or interest in, the enterprise. Plaintiff argues in her supplemental brief that she has pled a pattern of racketeering activity by PaineWebber by averring its involvement in the sale of over 9,000 offerings to EP–I investors. Additionally, PaineWebber has allegedly sold real estate limited partnerships for affiliates on some twenty-six occasions during the years 1983–94. Plaintiff further submits that:

"[t]he question in this case is whether the preceding prohibited activity created a di-

rect or indirect interest and control in the enterprise.... There is no question that Defendant maintained an economic interest in partnerships which it sold, including all five addressed in this case. This case will then further focus on the control it exercised over the enterprise. This control can only be established through additional discovery."

Pl.'s Supp.Responsive Br. at 22.

Plaintiff's argument misses the point. The crucial issue here is not whether PaineWebber maintained an interest in or control of the alleged enterprise, but whether PaineWebber's alleged interest or control caused any injury to Plaintiff independent of her investment in EP–I. Because the Court finds no allegations in the First Amended Complaint to support this essential element, the Court concludes that Plaintiff's § 1962(b) claim cannot withstand Defendant's motion to dismiss. *See Dugan v. Bell Telephone of Pa.,* 876 F.Supp. 713, 719 (W.D.Pa.1994).

Moreover, the amended allegations set forth in Plaintiff's proposed Second Amended Complaint are no more availing than those offered for her § 1962(a) claim. With respect to each reference in FAC ¶ 8 to Defendant's "partnerships," Plaintiff has merely added the qualifier "specifically EP–I." This change would not cure the shortcomings of the § 1962(b) claim. The Court is unable to see how additional discovery at this point would correct the problem. Accordingly, the Court will deny Plaintiff's motion for leave to amend her claim under 18 U.S.C. § 1962(b).

### C. *Plaintiff's Claim under § 1962(c)*

Section 1962(c) prohibits persons who are employed by or associated with an enterprise from conducting the enterprise's affairs through a pattern of racketeering activity.[8] In moving to dismiss Plaintiff's § 1962(c) claim, Defendant does not take issue with the nature of the injury alleged.[9] Defendant

**8.** For the purposes of RICO, a "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3), and "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4).

**9.** In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), the Court held that a § 1962(c) plaintiff

does, however, argue that the conduct complained of is not of the type proscribed. More specifically, Defendant argues that Plaintiff has failed to identify an enterprise separate and distinct from the allegedly liable "person"—i.e. PaineWebber—as § 1962(c) requires. The Court agrees that this claim must be dismissed under the law of this circuit.

In *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633–34 (3d Cir.1984), the Third Circuit first held that, for purposes of 18 U.S.C. § 1962(c), the alleged enterprise must be separate and distinct from the person sued. *Enright* involved a RICO action brought by a jewelry manufacturer against a single defendant—a metal refining corporation. Because the corporate defendant was alleged to be both the liable "person" and the entity fulfilling the "enterprise" requirement, the court concluded that the defendant could not be liable under § 1962(c) and reversed judgment for the plaintiff on that claim. The court based its ruling, in part, on the language of the statute:

> Under [18 U.S.C. § 1962(c) ], the "person" must be employed by or associated with an "enterprise." The Enright Refining Company, Inc. clearly is not employed by the Enright Refining Company, Inc.; nor is it logical to say that the Enright Refining Corporation, Inc. is associated with the Enright Refining Corporation, Inc. Thus, the language contemplates that the "person" must be associated with a separate "enterprise" before there can be RICO liability on the part of the "person."

751 F.2d at 633.

The court went further in *Brittingham v. Mobil Corp.*, 943 F.2d at 301 (3d Cir.1991), wherein it held that, if the alleged liable "person" is a corporation, the "enterprise" must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation." In *Brittingham*, as noted above, a class of plaintiff consumers sued Mobil Corporation and Mobile Chemical Company (an unincorporated

division of one of Mobil Corporation's wholly owned subsidiaries), alleging that defendants violated RICO in connection with the sale of purportedly biodegradable garbage bags. The § 1962(c) "enterprise" was the alleged "association in fact of Mobil [Corporation] and Mobil Chemical [Company], the advertising agencies engaged by them … and other agencies which participated in the marketing of Hefty 'Degradable' trash and garbage bags and Kordite and Marketote 'degradable' bags." *943 F.2d at 300.*

In affirming summary judgment for defendants, the *Brittingham* court upheld the district court's finding that, although facially distinct, the alleged enterprise was in fact not distinct from the defendants for purposes of applying the *Enright* rule. Significantly, the court observed that:

> [a] corporation must always act through its employees and agents, and any corporate act will be accomplished through an "association" of these individuals or entities. Consequently, the *Enright* rule would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf.

*Id.* at 301. The court described its task as "examin[ing] the enterprise to determine whether it is no more than an association of individuals or entities acting on behalf of a defendant corporation." *Id.* It noted that its decision granting judgment for defendants on the § 1962(c) claim "is in accord with numerous courts that have rejected attempts to circumvent the distinctiveness requirement by alleging enterprises that are merely combinations of individuals or entities affiliated with a defendant corporation." *Id.* (citations omitted).

■ This Court finds the *Brittingham* decision to be particularly instructive in light of the averments in this case. Paragraphs 9, 14, and 15 of the First Amended Complaint appear to be the most relevant in terms of identifying the alleged enterprise.[10] In addi-

---

need not allege injury other than harm from the predicate acts.

10. Those paragraphs read, in pertinent part, as follows:

9. That PaineWebber Incorporated, did violate 18 U.S.C. Section 1962(c), in that it em-

tion, paragraphs 5, 6, 8, 10, 13 and 16 bear some relevance. This Court is unable to read any of the foregoing allegations, in whole or in part, as asserting the existence of an enterprise distinct from Defendant because each identified element of the alleged enterprise is immediately or elsewhere identified as Defendant, a subsidiary of Defendant, or an agent or affiliate of Defendant.

The Court notes that Plaintiff appears to plead two alternative "enterprises": (1) PaineWebber Incorporated as "a continuous and functioning Enterprise" and (2) a continuing "unit of enterprises" of which Paine-Webber acted as a member in forming and selling various limited partnerships. FAC ¶ 14. Paragraph 15 of the First Amended Complaint suggests that the continuing "unit of enterprises" consists of EP–I, EP–II, and EP–III and their respective constituents. *See also* FAC ¶ 9(b).

Clearly, Plaintiff's suggestion that Defendant is itself the enterprise is inadequate to support the § 1962(c) claim under the holding of *Enright,* 751 F.2d at 633–34. Even with respect to Plaintiff's second theory, however, the alleged "continuous unit of enterprises" appears to involve nothing more than PaineWebber acting together with various subsidiary companies, related corpora-

tions, and other agents and affiliates. For example, FAC ¶ 9(a) alleges that Defendant obtained funds "through itself and through its various affiliates." Paragraph 5 notes that Defendant sold EP–I and its siblings and that Defendant's affiliates managed these partnerships. Although ¶ 5 states that Defendant "aided and abetted" in the formation of the partnerships, neither this paragraph nor any other part of the First Amended Complaint suggests that the assisted entity was distinct from Defendant. Paragraph 6 identifies the general partners of the various limited partnerships as subsidiaries, siblings, or affiliates of Defendant. Paragraph 8, in addressing Defendant's alleged violation of § 1962(b), refers to the other members of the Enterprise as "all affiliated corporations or partnerships." Paragraph 10 reiterates that "PaineWebber Incorporated conspired with others in a clearly defined assertainable [sic] structure of corporations and partnerships, all of which are affiliates of one another."

The later portions of the First Amended Complaint are no more helpful to Plaintiff. Paragraph 13, although assigning Defendant a specific role within the enterprise, fails to identify the role of any other member of the

---

ployed or associated itself with an enterprise engaged in interstate commerce to conduct the Enterprise's affairs through a pattern of Racketeering Activity in that:

(a) PaineWebber Incorporated had a shared purpose of gaining funds from the investing public itself and through its various affiliates, as set forth in various subsections herein, including the one dealing with Enterprise.

(b) PaineWebber Incorporated had a continuity as a unit, in that the structure of PaineWebber Equity Partners I—Limited Partnership is the same or extremely similar to the structure of PaineWebber Equity Partners II—Limited Partnership and is the same or extremely similar to the structure of PaineWebber Equity Partners III—Limited Partnership, the latter two (2) being follow-on programs to PaineWebber Equity Partners I—Limited Partnership.

*    *    *    *    *    *

14. That PaineWebber Incorporated, was a continuous and functioning Enterprise and acted as a member of a continuous unit of enterprises by forming a series of limited partnerships in which it acted as the selling broker-dealer, while aiding and abetting in the formation of other limited partnerships and/or general partners, all

of which are affiliates of PaineWebber Incorporated.

15. That the enterprise has assertainable [sic] structure as follows:

(a) PaineWebber Equity Partners I—Limited Partnership

(i) selling broker dealer: PaineWebber Incorporated

(ii) limited partnership: PaineWebber Equity Partners I—Limited Partnership

(a) a Virginia Limited Partnership

(i) general partners of the partnership: First Equity Partners, Inc. and Properties Associates 1985.

(ii) First Equity Partners, Inc. is a wholly owned subsidiary of PaineWebber Incorporated.

(iii) The general partners of Properties Associates 1985 are officers of First Equity Partners, Inc.

(b) PaineWebber Equity Partners II—Limited Partnership

*    *    *    *    *    *

(c) PaineWebber Equity Partners III—Limited Partnership

*    *    *    *    *    *

enterprise. Paragraph 15 sets forth the actual structure of the alleged enterprise as consisting of EP–I, EP–II, EP–III together with their respective constituents and Defendant as the selling broker-dealer of each limited partnership. The various general partners of EP–I, EP–II, and EP–III are all alleged to be either subsidiaries, siblings, or affiliates of Defendant. Paragraph 16 reiterates the averment that "PaineWebber Incorporated is directly related and affiliated to the other persons or entities set forth above [and] the Enterprise set forth above." FAC ¶ 16(a).

The sum and substance of these allegations is that the Defendant either *was* the enterprise or acted as an association-in-fact enterprise along with its subsidiaries, relatives, agents and affiliates. Furthermore, the pleadings and briefs before the Court suggest that the enterprise was acting solely in furtherance of Defendant's own business interests.[11] *Brittingham* makes clear that these allegations are insufficient to state a violation of § 1962(c).

This case is not unlike the factual scenario involved in *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107 (E.D.Pa.1986), wherein various investors brought a class action against a brokerage house alleging, among other things, that defendant had violated 18 U.S.C. § 1962(c) by engaging in various racketeering activities in connection with the sale of securities. The alleged "enterprise" consisted of various branch offices of the defendant corporation. In *Gilbert*, the court entered summary judgment for the defendant on the basis that plaintiffs had failed to demonstrate the existence of an enterprise sufficiently distinct from the defendant itself. The court found that, even given the flexible definitions of RICO, "the various branch offices of [defendant Prudential Bache Securities, Inc.] must be regarded as simply a part of the defendant Bache, and not as separate entities." 643 F.Supp. at 109. In addition, the court found that "it was plainly the business of the defendant Bache which was being conducted through the alleged pattern of racketeering activities, and not any separately identifiable business of the various branches." *Id.*

In contrast to both *Gilbert* and the instant case is *Gurfein v. Sovereign Group*, 826 F.Supp. 890 (E.D.Pa.1993), which involving a RICO action arising from investments in certain real estate limited partnerships. The court in *Gurfein* allowed the plaintiffs to proceed under § 1962(c) on an alleged enterprise of "all those involved in the supposedly unlawful real estate scheme, including, this court assumes, defendants and others." *Id.* at 913. In *Gurfein*, the court determined that the *Enright* test was met because the partnership's general partners were persons distinct from the defendants. *Id.* at 915. In fact, the court noted, the general partners had eventually been removed due to disagreements concerning how the partnership was to be managed. *Id.*

Although policy disagreements are by no means a prerequisite to satisfy the enterprise requirement, a complaint must include an

---

**11.** Plaintiff notes, for example, that:

> In the late 70's and early 80's there was a switch generally in the brokerage industry from a marketing organization to a market driven organization in that the industry started to create its own investment vehicles and then sold them. This was true of PaineWebber Incorporated in that it began to market at least as early as 1983 and continues to market through at least 1994 real estate or real estate related investment vehicles in which it is not solely the underwriter (i.e. seller) but where it is the deemed issuer under The Securities Act because the investment vehicle is created by an affiliate of PaineWebber Incorporated.
>
> \* \* \* \* \* \*
>
> The reality of all of the relationships was that PaineWebber Properties, Incorporated [a subsidiary of Defendant] through its various offi-

cers, directors, and shareholders created EP–I which was then sold by PaineWebber Incorporated.

> \* \* \* \* \* \*
>
> ... PaineWebber Incorporated in conjunction with PaineWebber Properties, Incorporated [its subsidiary] engaged in the preparation of certain [allegedly fraudulent] sales literature ... The details of these matters are set forth in Plaintiff's Second Amended Complaint.
>
> \* \* \* \* \* \*
>
> ... Plaintiff and other members of the class purchased this security premised on their brokers' assertions as to the nature of the program and its economic benefits as provided to said brokers by PaineWebber Incorporated and PaineWebber Properties, Inc.

(Pl.'s Supp.Resp.Br. to Def.'s Mot. to Dismiss at pp. 2–4.)

allegation that the enterprise included some person or entity operating outside of the defendant's or defendants' normal scope of business. Here, all members of the alleged enterprise, from the brokers to the general partners of EP–I, were acting in furtherance of Defendant's business. Thus, these entities were not an "enterprise" within the meaning of § 1962(c).[12]

In Plaintiff's Proposed Second Amended Complaint, she has expended considerable effort in describing the structure of the alleged enterprise. *See* Plaintiff's Proposed Second Amended Complaint at ¶ 15. However, she again fails to identify an enterprise distinct from Defendant. Although Plaintiff describes a large number of corporations and partnerships in her proposed Second Amended Complaint, all of these organizations are under the exclusive control of either Defendant or its parent, PaineWebber Group, Inc. *Id.* In Exhibit A to the proposed Second Amended Complaint, Plaintiff has provided a large schematic representation of the alleged enterprise. In this chart, Defendant is placed at the top of the pyramid that represents the alleged enterprise. All lines of control flow from Defendant or PaineWebber

Group, Inc. The portions of the First Amended Complaint that most strongly suggest an identity between Defendant and the enterprise, notably ¶¶ 9, 10 and 14, are not altered in any meaningful way.[13] Paragraph 16(f) of the proposed Second Amended Complaint retains the allegation that "PaineWebber Incorporated is directly related and affiliated to the other persons set forth above, the Enterprise set forth above." Nothing in Plaintiff's proposed Second Amended Complaint suggests that these subsidiaries were acting in some way other than in furtherance of Defendant's business. Thus, even if this Court were to grant Plaintiff leave to amend, she would still not have pleaded a cause of action under § 1962(c).

Plaintiff notes cases in which courts construing § 1962(c) have found enterprises among groups of corporations, *United States v. Thevis,* 665 F.2d 616, 625 (5th Cir. Unit B), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982), or unincorporated groups, *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Plaintiff appears to mis-

**12.** In *Jaguar Cars, Inc. v. Royal Oaks Motor Car, Co.,* 46 F.3d 258 (3d Cir.1995) the court determined that its jurisprudence concerning the distinctiveness requirement of § 1962(c) as applied to corporate officers and employees did not survive the Supreme Court's opinions in *Reves v. Ernst & Young,* —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) and *National Organization for Women v. Scheidler,* —— U.S. ——, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). In particular, the court discussed its holding in *Enright* and concluded that one of the grounds underlying that ruling—i.e. the belief that RICO should be applied only in the context of criminal and corrupt organizations infiltrating legitimate organizations—was no longer valid in light of *Reves* and *Scheidler. See generally* 46 F.3d at 262–268.

Nevertheless, this Court does not read *Jaguar Cars* as in any way undermining or affecting this Court's analysis of the § 1962(c) claim in the instant case, as set forth above. *Jaguar Cars* made clear that "the essential holding of *Enright* remains undisturbed—a claim simply against one corporation as both 'person' and 'enterprise' is not sufficient" under § 1962(c). *Id.* at 268. The *Jaguar Cars* court merely held that, "when officers and/or employees operate and manage a legitimate corporation, and use it to conduct ... a pattern of racketeering activity, those defendant persons are properly liable under

§ 1962(c)." *Id.* at 269. Moreover, as the *Brittingham* court recognized, there is good reason to distinguish between corporate "persons" and individual "persons" in applying the *Enright* rule:

[I]ndividual defendants, in contrast to collective entities, are generally distinct from the enterprise through which they act. Unlike a collective entity, it is unlikely that an individual defendant by himself would constitute a valid enterprise.... But when a defendant is itself a collective entity, it is more likely that the alleged enterprise is in reality no different from the association of individuals or entities that constitute the defendant or carry out its actions. Unlike individual defendants, a corporation can act only thorough its employees and agents.

943 F.2d at 302.

**13.** Paragraph 9 of the proposed Second Amended Complaint changes nothing in Plaintiff's original allegations, but merely adds the averment: "EP–I itself continues to exist." Paragraph 10 adds nothing, but corrects the former misspelling of the word "ascertainable." Paragraph 14 of the proposed Second Amended Complaint likewise changes nothing, but alleges: "PaineWebber Incorporated affiliates continue to manage EP–I." Pl.'s Proposed Second Amended Complaint ¶¶ 9, 10, 14.

perceive the problem. It may well be that, under the proper circumstances, the "enterprise" alleged here is of a nature that could support a claim under § 1962(c). In the instant case, however, Plaintiff does not allege that the enterprise is sufficiently distinct from the "person" that she is suing. Indeed, as the *Computer Sciences* court held, " 'enterprise' was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit and, failing that, to punish." 689 F.2d at 1190. For the foregoing reasons, Plaintiff's allegations, both in her First Amended Complaint and in her Proposed Second Amended Complaint, fail to allege an "enterprise" sufficiently distinct from Paine-Webber. Accordingly, the § 1962(c) claim against PaineWebber must be dismissed.

### D. *Plaintiff's Claim under § 1962(d)*

█ Defendant moves for dismissal of Plaintiff's § 1962(d) claim on the ground that, having failed to state a viable cause of action under § 1962(a)–(c), Plaintiff's claim under this provision cannot survive. It is well established in this circuit that, in order to successfully plead a cause of action for a RICO conspiracy under § 1962(d), a plaintiff must first establish a violation of at least one of the three other subsections. *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 262 (3d Cir.1995); *Lightning Lube*, 4 F.3d at 1191 (citing *Leonard v. Shearson Lehman/American Express, Inc.*, 687 F.Supp. 177, 182 (E.D.Pa.1988)); *Kehr Packages, Inc.*, 926 F.2d at 1411 n. 1; *Jiffy Lube International, Inc. v. Jiffy Lube of Pennsylvania*, 848 F.Supp. 569, 583 & n. 20 (E.D.Pa. 1994) (citing *Lightning Lube* ); *Rolo v. City Investing Co. Liquidating Trust*, 845 F.Supp. 182, 224 (D.N.J.1993), *aff'd*, 43 F.3d 1462 (3d Cir. Nov. 9, 1994) (table); *Pagnotti Enterprises, Inc. v. Beltrami*, 787 F.Supp. 440, 447–48 (M.D.Pa.1992). In light of the Court's determination that Plaintiff's other RICO claims fail to state a cause of action, this claim must be dismissed as well.

### IV. CONCLUSION

Because Plaintiff's Amended Complaint does not state a cause of action, Defendant's Motion to Dismiss will be granted. Because Plaintiff's proposed Second Amended Complaint does not remedy the fatal flaws of the Amended Complaint, Plaintiff's Motion for Leave to Amend will be denied. An appropriate order follows.